UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FRANCO JAHDIEL GONZALEZ MUJICA,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondents.

Case No. 2:26-cv-02826-TMC

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION AND BACKGROUND

Petitioner Franco Jahdiel Gonzalez Mujica is a Venezuelan citizen who entered the United States without inspection in May 2024.[1] Dkt. 3 at 14; Dkt. 8-1 at 2. On May 31, 2024, Petitioner was apprehended and detained by a United States Customs and Border Protection officer. Dkt. 7 ¶ 3; Dkt. 8-1 at 7. He was then issued a notice to appear charging him as inadmissible to the United States under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Dkt. 8-2 at 2. Later that week, Petitioner was released from custody on an order of release on recognizance ("OREC").

[1] Petitioner attests that he entered the United States on June 1, 2024. Dkt. 2 ¶ 5. But both parties submit evidence that Petitioner was encountered by Customs and Border Protection on May 31, 2024. Dkt. 3 at 14; Dkt. 8-1 at 2. Similarly, there is conflicting evidence in the record as to whether Petitioner's initial release from custody occurred on June 1, 2024, or June 3, 2024. *Compare* Dkt. 3 at 10–12, *with* Dkt. 7 ¶ 4, *and* Dkt. 8-3. The exact dates of Petitioner's entry and release are not material to the Court's analysis.

Dkt. 3 at 10–12; Dkt. 8-3. Petitioner's OREC stated that his release was "contingent upon [his] enrollment and successful participation in an Alternatives to Detention (ATD) program," under which he would be "subject to electronic monitoring." Dkt. 3 at 10. The OREC explained that failure to comply with Petitioner's ATD requirements could result in a custody redetermination or his re-detention. *Id.*

Petitioner was enrolled in an ATD program and received a watch for mandatory check-ins with Immigration and Customs Enforcement ("ICE"). Dkt. 2 ¶ 6; Dkt. 7 ¶ 5. Petitioner applied for asylum, found an apartment, joined a church, and worked for DoorDash and Uber making deliveries seven days a week. Dkt. 2 ¶¶ 18–19. Petitioner has no criminal history. *Id.* ¶ 20.

Over the next two years, Petitioner used the watch or an app to facilitate his check-ins. Dkt. 2 ¶¶ 7–15. Petitioner attests that while he experienced logistical difficulties, he "never missed" any check-ins or appointments. *Id.* ¶¶ 7–9, 12–14, 16. Petitioner's sworn declaration provides a detailed explanation of how he checked in using the watch, app, or through in-person visits. *See id.* Federal Respondents dispute this contention and submit a copy of Petitioner's I-213, which asserts that he committed 110 ATD violations between August 7, 2024 and April 7, 2026, including missed callbacks, biometric check-ins, in-person office appointments, and home visits. Dkt. 8-1 at 3–7.[2] Petitioner asserts that his Intensive Supervision Appearance Program

[2] Petitioner objects to Respondents' submission of the I-213 and argues that both that document and the portion of the Rodriguez declaration (Dkt. 7) that reference it are inadmissible under the Rules of Evidence. The Court agrees that, if offered for the truth of the matter of asserted concerning the ATD violations, the narrative portion of the I-213 and the corresponding paragraph of the Rodriguez declaration are likely inadmissible. *See M.Z.H. v. Hermosillo*, No. C25-2523-KKE, 2025 WL 3718655, at *4 (W.D. Wash. Dec. 23, 2025). Even if the Court considers them, however, they are not especially probative without more detail about the underlying records and violations, and serve mainly to show the factual disputes surrounding the basis for Petitioner's re-detention that should have been addressed through a pre-deprivation hearing in front of a neutral decisionmaker. *See id.* at *5.

("ISAP") account does not contain complete or accurate information about his ATD check-ins. Dkt. 2 ¶ 17.

On April 29, 2026, ICE detained Petitioner and revoked his OREC after he appeared for an in-person ISAP appointment. *Id.* ¶ 16; Dkt. 8-1 at 3–8. Petitioner was transferred to the Northwest ICE Processing Center, where he remains detained. Dkt. 1 ¶ 5; Dkt. 7 ¶¶ 7, 10. On July 14, an Immigration Judge ordered Petitioner removed to Venezuela. Dkt. 8-4. Petitioner appealed that order; the appeal remains pending. Dkt. 7 ¶ 8.

On August 10, Petitioner filed a petition for writ of habeas corpus, arguing that his re-detention without notice or a pre-deprivation hearing violates his due process rights. Dkt. 1. On August 25, Federal Respondents filed a return to the habeas petition. Dkt. 6. On August 31, Petitioner filed a traverse. Dkt. 9.

The habeas petition is now ripe for the Court's review. For the following reasons, the Court GRANTS the petition.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

First, the parties dispute the statutory authority governing Petitioner's detention. Federal Respondents contend that Petitioner is lawfully subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Dkt. 6 at 4–5. Petitioner argues that prior to his most recent detention, the government has treated him as subject to discretionary detention under 8 U.S.C. § 1226(a), and

his current detention thus falls under that statute. Dkt. 9 at 6–7. This Court has explained that the government's treatment of a petitioner over the course of their removal proceedings is especially relevant in determining the applicable detention authority. *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, *5 (W.D. Wash. Nov. 26, 2025). Where, as here, a petitioner was released on an OREC after initial detention, he is then subject to § 1226(a) if re-detained, absent changed circumstances justifying detention under a different statute. *Id.* at 7 (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007)). The Court therefore agrees with Petitioner that he is subject to discretionary detention.

Turning to the parties' primary arguments, Petitioner contends that ICE violated his due process rights by re-detaining him over two years after his initial release without first affording him "a hearing before a neutral decisionmaker to determine whether any re-detention is justified, and whether [he is] a flight risk or danger to the community." Dkt. 1 ¶¶ 23–36, 50–53; Dkt. 9 at 7–13. He seeks immediate release from custody, Dkt. 1 at 16, Dkt. 9 at 13, as well as an injunction prohibiting Respondents from re-detaining him "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternative to detention would mitigate those risks." Dkt. 1 ¶¶ 37–47. Federal Respondents counter that Petitioner's ATD violations justify his April 2026 re-detention, Dkt. 6 at 5–8, and that permanent injunctive relief requiring ICE to bear the burden of proof before detaining Petitioner in the future is inappropriate. *Id.* at 8. The Court agrees with Petitioner in both his due process and injunctive relief claims.

### A. Due process requires Petitioner's immediate release from custody.

Petitioner analyzes his circumstances through the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and discusses numerous cases from this district and elsewhere that have granted release to similarly situated petitioners. Dkt. 1 ¶¶ 23–36; *see, e.g.*, *E.A.T.B. v.*

*Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 (W.D. Wash. 2025); *Kumar v. Wamsley*, 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *2–3 (W.D. Wash. Sept. 17. 2025). The principles of *Mathews* and procedural due process as applied to noncitizens living in the community under bonds or orders of supervision have been repeatedly established by the courts of this District. This Court will not retread that ground in every case, such as this one, that arises from Respondents' repeated, ongoing detention of noncitizens in violation of those principles. *See, e.g.*, *Lima Gamez v. Hernandez*, No. 2:26-cv-01104-BAT, 2026 WL 1382362, at *7 (W.D. Wash. May 18, 2026) ("Respondents have given no indication that they intend to stop indiscriminately re-detaining previously released persons without prior notice and opportunity to be heard, despite the voluminous caselaw in this district repeatedly declaring such arrests unlawful."); *Ortiz v. Hermosillo*, No. 2:26-cv-00384-TL, 2026 WL 607672, at *5 (W.D. Wash. Mar. 4, 2026) ("Respondents have been on notice in this District since at least August 19, 2025" yet "continue[] to re-detain petitioners in this District without due process."). Instead, the Court will focus on whether anything in the record here distinguishes this petition from this District's body of cases on procedural due process.

Federal Respondents argue that Petitioner's numerous ATD violations reduce both his interest in freedom from detention and the process due upon re-detention, as his initial release was "contingent upon compliance with" his ATD conditions. Dkt. 6 at 6–7. But as Petitioner points out, these ATD violations and the evidence supporting them are disputed, making a pre-deprivation hearing especially important to resolve those factual questions before the government infringes on Petitioner's liberty. Dkt. 9 at 10–12. Moreover, even assuming that Federal Respondents' account of Petitioner's ATD violations is complete and accurate, Federal Respondents do not explain how these missed check-ins create the sort of "urgent concerns" necessary for the government to re-detain a released noncitizen without pre-deprivation process.

*Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). It is undisputed that Petitioner has no criminal history, and there is no evidence in the record suggesting that the alleged ATD violations demonstrate flight risk as opposed to failures of technology or communication when Petitioner has resided and worked in the same neighborhood for years.

The Court concludes that the circumstances of Petitioner's arrest are largely indistinguishable from the many due process cases decided in this District that have ordered release. *See, e.g.*, *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (*Mathews* factors favored petitioner despite 40 alleged ATD violations); *M.Z.H.*, 2025 WL 3718655 at *5 (dispute over ATD violations "only highlights the magnitude of the risk of erroneous deprivation of Petitioner's liberty interest"). The government's decision to re-detain Petitioner without notice or hearing violated his right to procedural due process. The Court therefore GRANTS the habeas petition and ORDERS Respondents to release Petitioner within 24 hours of this order.

**B. Petitioner is entitled to injunctive relief from re-detention.**

A petitioner seeking permanent injunctive relief must show

> (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Petitioner is the father of a six-year-old daughter. Dkt. 2 ¶ 21. During his detention, Petitioner experienced the loss of his father. *Id.* Petitioner has undoubtedly suffered irreparable injuries—his unlawful re-detention and violation of his due process rights, loss of regular contact with his young daughter and late father—where monetary damages are unavailable or inadequate to compensate him. *Saadhom v. Bondi*, No. 2:26-CV-00425-TL, 2026 WL 698786, at *6 (W.D. Wash. Mar. 12, 2026) (*citing Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). The

balance of hardships leans in favor of Petitioner, "as the injunction requires only that Respondents comply with the Constitution before re-detaining him." *Saley v. Scott*, No. 2:26-CV-00797-JNW, 2026 WL 914810, at *5 (W.D. Wash. Apr. 3, 2026). Lastly, "the public interest is served by an order prohibiting Respondents from violating the Due Process Clause." *Id.*

Petitioner has satisfied the requirements for a permanent injunction. As other orders in this District have observed, Respondents have demonstrated an intent to continue their practices no matter how many federal district courts conclude that those practices violate the law. *See, e.g.*, *Lima Gamez*, 2026 WL 1382362, at *7. Petitioner thus faces an ongoing likelihood of irreparable harm. Absent circumstances urgently requiring arrest, the Court prohibits Respondents from re-detaining Petitioner as described below. *See Guillermo M.R.*, 791 F. Supp. 3d at 1035 ("There may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."); *Caglar v. Wamsley*, No. 2:26-cv-00787-TMC, 2026 WL 1123515, at *5 (W.D. Wash. Apr. 24, 2026) (discussing burden of proof in re-detention hearings).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2. Within 24 hours of this Order, Respondents must RELEASE Petitioner Franco Jahdiel Gonzalez Mujica subject to the terms of his initial OREC.

3. Respondents shall file a status report confirming Petitioner's release no later than September 8, 2026.

4. Respondents must return to Petitioner any personal property, including any personal identification document (other than a passport) and any employment authorization document.

5. Absent circumstances urgently requiring arrest or an administratively final order of removal, Respondents are ENJOINED from re-detaining Petitioner Franco Jahdiel Gonzalez Mujica during the pendency of his removal proceedings absent

written notice and a hearing before a neutral decisionmaker, at which the government bears the burden of proving by clear and convincing evidence Petitioner's dangerousness or risk of flight based on changed circumstances.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412 and the parties are encouraged to confer before filing a petition.

Dated this 4th day of September, 2026.

Tiffany M. Cartwright
United States District Judge